Martha C. Luemers (CA Bar No. 104658)
DORSEY & WHITNEY LLP
1717 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
luemers.martha@dorsey.com

Patrick J. McLaughlin, Pro Hac Vice
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
mclaughlin.patrick@dorsey.com
Telephone: (612) 340-2600
Facsimile: (612) 340-2643

Attorneys for Defendants

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re | Chapter 7 |
| BROBECK, PHLEGER & HARRISON LLP, | Case No.: BC 03-32715 (DM) |
| Debtor. | Adv. Proc. No. 08-03027 |
| | |
| RONALD F. GREENSPAN, Chapter 7 Trustee for Brobeck, Phleger & Harrison LLP, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | **Date: April 13, 2009** |
| DORSEY & WHITNEY LLP, PATRICK ARRINGTON, JOHN S. BAKER, ELLEN S. BANCROFT, DAVID L. HAYES, SCOTT R. SANTAGATA and GABRIELLE M. WIRTH, | **Time: 1:30 p.m.** |
| | **Ctrm: 22** |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page #

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT .......................................................................................1

FACTS ..............................................................................................................................4

ARGUMENT.....................................................................................................................8

      A.    PARTNERSHIP OPPORTUNITY CLAIMS................................................9

      B.    UNFINISHED BUSINESS CLAIMS............................................................12

CONCLUSION................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Donleavey v. Johnston*, 24 Cal.App. 319, 141 P. 229 (1914)) ..............................................11

*Houghten v. South*, 965 F.2d 1532 (9th Cir. 1992)...................................................................9

*Hunt v. Cromartie*, 526 U.S. 541 (1999) .................................................................................9

*Jewel v. Boxer*, 203 Cal. Rptr. 13 (Cal. Ct. App. 1984).....................................................passim

*Leff v. Gunter*, 33 Cal.3d 508, 658 P.2d 740, 189 Cal.Rptr. 377 (1983) .............................10, 12

*Page v. Page*, 55 Cal.2d 192, 10 Cal.Rptr. 643, 359 P.2d 41 (1961) .....................................11

*Rogers v. Tennessee*, 532 U.S. 451 (2001) ..........................................................................2, 12

*Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993 (9th Cir. 2007) ..............................................8

## STATUTES AND RULES

Fed. R. Civ. P. 1......................................................................................................................4

Cal. Corp. Code § 16404..........................................................................................................13

Cal. Corp. Code § 16103 (b)(3) ................................................................................................13

Defendant Dorsey & Whitney LLP ("Dorsey"), and defendants Patrick Arrington, John S. Baker, Ellen S. Bancroft, David L. Hayes, Scott R. Santagata and Gabrielle M. Wirth (collectively, the "Former Brobeck Partners" and together with Dorsey, "Defendants"),[1] respectfully submit this memorandum of points and authorities in opposition to plaintiff's motion for partial summary judgment.

## PRELIMINARY STATEMENT

Seven words from the opinion in *Jewel v. Boxer* are fatal to Plaintiff's arguments and make this an easy case for the Court to decide. Those words, set forth in the first sentence of the opinion, made crystal clear that its holding should be applied only "in the absence of a partnership agreement" that addresses unfinished business accounting issues. *Jewel v. Boxer*, 203 Cal. Rptr. 13, 15 (Cal. Ct. App. 1984). *See also id.* at 19 ("If there is any disproportionate burden of completing unfinished business here, it results from the parties' failure to have entered into a partnership agreement *which could have assured such a result would not occur*. The former partners must bear the consequences of their failure to provide for dissolution in a partnership agreement.") (emphasis added). In this case, there is a controlling agreement—the Unfinished Business Agreement, as part of the Final Partnership Agreement—that deals directly with unfinished business issues, so the extinguishment of Plaintiff's claims should have been "assured" the day those agreements became effective. Case closed.

Struggling for a hook, Plaintiff asks the Court to declare the Unfinished Business Agreement to be illegal, invalid, unconscionable, and null and void based on the fact that it was

---

[1] Unless otherwise defined, capitalized terms herein are intended to have the meanings assigned to them in Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment (Doc. No. 17) (the "Dorsey SJ Memorandum"). The "Orrick SJ Memorandum" refers to, from Adv. Pro. Case No. 08-3028, Memorandum of Points and Authorities in Support of Orrick Defendants' Motion for Summary Judgment (Doc. No. 31).

1

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

drafted specifically with the guidance provided by *Jewel* opinion in mind. As demonstrated below, under Plaintiff's theory, the mere consideration of *Jewel* issues prior to adoption of a *Jewel* mutual waiver is damning and conclusive evidence of bad intent and improper motives. But given the fact that *Jewel* rights could not be waived without being considered, under Plaintiff's theory no *Jewel* waiver could ever really be legally accomplished. It is a classic application of the "heads I win, tails you lose" approach.

Assuming that he can convince the Court to invalidate the Unfinished Business Agreement, either as void, "manifestly unreasonable," or a fraudulent transfer, Plaintiff then asks the Court to extend *Jewel* and the "partnership opportunity" doctrine in a astonishing way that would make every former law partner of a firm partnership an indentured servant of that partnership in perpetuity to the extent that former partner ever again did any legal work for any entity that had ever been represented by his or her former firm. Under Plaintiff's "unfinished business" and "partnership opportunity" theories, a former partner of a dissolved partnership is not necessarily disqualified from continuing in the private practice of law, but he or she can never again provide legal services for any entity that had been a client of the dissolved partnership without incurring liability to the estate of the dissolved partnership. These theories do violence to all notions of common sense and reason which are, after all, the notions from which all common law (including *Jewel*) is derived. *See Rogers v. Tennessee*, 532 U.S. 451, 467 (2001) (a "routine exercise of common law decisionmaking" is to bring the law "into conformity with reason and common sense").[2]

---

[2] Given the obvious inequities in play in *Jewel*, that opinion can be reconciled with notions of common sense and reason. However, attempting to use *Jewel* as a building block for a much broader common law rule that would extend its holding beyond contingent fee litigation matters cannot.

2

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

After Brobeck's dissolution, entities and individuals that had previously engaged Brobeck for all types of matters—transactional and litigation, major and minor, ongoing and new business—needed to find representation. If Plaintiff's reading and proposed application of *Jewel* is correct, however, the right of those clients to opt to continue to be represented by any Former Brobeck Partner would be severely impaired, for the simple reason that no firm would hire such a partner. Consider the following example: Brobeck partner Smith is lead counsel in a large, complex hourly rate litigation matter for Acme Co. The litigation is expected to continue for three years and for those years consume three-fourths of all of Smith's time and all of three associates' time. No rational firm would take Smith on, because it would be required to support Smith's representation of Acme, but any profit associated with the representation would have to be turned over to Plaintiff. Since the litigation requires Smith working with the support of a firm, and since Plaintiff's theory has rendered Smith toxic to any firm that would otherwise consider employing him, Acme has for all practical purposes been denied the right to choose to continue to engage Smith as its counsel. Worse still, if Smith and his partners at Brobeck had contemplated the ramifications of *Jewel* on their practice and ability to continue to serve their clients and had agreed to modify their *Jewel* rights (as they in fact did), Plaintiff's theory would deny effectiveness to any such agreement.

As this hypothetical demonstrates, the issues presented to the Court on these motions go to the very heart of the nature of the practice of law. Is it a profession in which clients have the absolute right to choose counsel, or are clients and their matters nothing more than commodities, mere property to be "conveyed"—indistinguishable from furniture? The resolution of these issues will have a broad impact on every law firm in the country as they consider whether to offer former partners of a dissolved firm with a place to practice law thereafter, and a broad

3

impact on the ability, as a practical matter, for clients to pick counsel of their choice.[3]

Plaintiff has brought much value to the Brobeck estate and deserves credit where credit is due, but with this case he has reached the bottom of the barrel of viable claims. Plain and simple, Plaintiff's claims against Defendants fail at each stage of the analysis and, at this point, this case is a complete waste of assets of the estate. The Court should terminate this litigation now for the benefit of all unsecured creditors and allow the Former Brobeck Partners to put litigation with Plaintiff, which has been going on for years in multiple adversary proceedings, behind them once and for all. *See* Fed. R. Civ. P. 1 ("These rules . . . should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.")

## FACTS

Defendants have set forth their recitation of the relevant facts in the Dorsey SJ Memorandum, which incorporates by reference of the facts (and arguments) set forth in the Orrick SJ Memorandum. Defendants will not repeat those facts here. However, there are certain assertions that are represented as "facts" as described in Plaintiff's Memorandum that warrant context and/or correction in this response.

- Plaintiff defines "Unfinished Business" as "business of Brobeck that was unfinished as of Brobeck's dissolution," and then proceeds to build his arguments on that premise. Pf's Mem. at 2-3. But that is quite a broad and circular definition, as Brobeck (the firm) literally abandoned all of its clients with less than 10 days notice. Defendants had no input in Brobeck's decision to dissolve and leave thousands of clients in the lurch, yet the Former Brobeck Partners are

---

[3] It should also be noted that Plaintiff's interpretation of *Jewel* and the alleged illegality of any *Jewel* waiver, combined with his partnership opportunity theory, is irreconcilable with letter and the spirit of the Rules of Professional Conduct. *See* Rule 5.6 Comment ("An agreement restricting the right of partners or associates to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer.").

4

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Case: 08-03027    Doc# 29    Filed: 03/27/09    Entered: 03/27/09 14:08:56    Page 7 of 20

here portrayed as villains despite their tireless efforts to contribute to an orderly dissolution under tumultuous circumstances in a way that maximized post-dissolution collections on behalf of the estate for pre-dissolution services rendered by Brobeck, and minimized potential claims against Brobeck by former clients based on potential damages caused by the abandonment. *See, e.g.*, Hayes Dep. at 31; Baker Dep. at 43.[4]

- Plaintiff's assumption is that every client that a Former Brobeck Partner did any work for while at Brobeck at any point in time and later did any work for at Dorsey at any point in time was a client that he or she "brought to Dorsey." Pf's Mem. at 5. This assumption is not tethered to reality and is insulting to clients, as it suggests that they are chattel that lawyers can simply order transferred to a new location. In the real world, clients have and continually exercise free will, and in this case there is no evidence that a single former Brobeck client—many of whom were understandably angry at being abandoned by Brobeck[5]—agreed to engage Dorsey generally, and the Former Brobeck Partners specifically, before evaluating the alternatives available in the entire legal marketplace. In fact, the deposition testimony established that, in most instances, any clients that had been Brobeck clients (and, by the way, might have been clients of 100 other law firms as well) and later were Dorsey clients (and, by the way, might have been Dorsey clients as well long before Brobeck's dissolution) sent work to Dorsey only after a competitive process was opened for many firms to make a pitch for that same work. *See, e.g.*, Bancroft Dep. at 46-47; Wirth Dep. at 41. Put differently, the

---

[4] The transcripts from the depositions of all of the Former Brobeck Partners are attached to the Declaration of Todd C. Pearson (Doc. No. 18).

[5] *See, e.g.*, Bancroft Dep. at 46 ("The client was very angry about the firm closing its doors because we were trying to close that financing. We had lost that work and had to actively pitch it . . . [I]t took a long time to be able to get them to work with me again.")

5

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Case: 08-03027    Doc# 29    Filed: 03/27/09    Entered: 03/27/09 14:08:56    Page 8 of 20

Former Brobeck Partners had to start from scratch to earn the business of potential clients, some of whom harbored resentment at Brobeck and the Former Brobeck Partners over the chaos, and possibly damages, caused by Brobeck's sudden implosion.

- One of the more remarkable statements made in Plaintiffs' Memorandum is the assertion that it is "beyond dispute" that the "Firms [Dorsey and Orrick] collected fees, and made profits, on Brobeck's unfinished business and partnership opportunities." Pf's Mem. at 1. With respect to Dorsey and the Former Brobeck Partners who joined Dorsey, this is a breathtaking misstatement of the record before this Court.
  - What is "beyond dispute" is that Plaintiff has failed to submit any evidence at all that Dorsey made any profit whatsoever from any matters that could even possibly be considered unfinished business of Brobeck.
  - This is the evidence in the record:
    - Dorsey produced a list of all of the matters opened by its newly arrived Brobeck partners in February, March and April, 2003. Declaration of Robert W. Mockler (Doc. No. 25) ("Mockler Dec.") Exh. H. Not all of those matters represented matters begun at Brobeck–in fact, only a fraction of the matters did, but logic dictated that, if any matter could be considered "unfinished business," it would have to have been opened within 90 days of the partners' transition from Brobeck to Dorsey. For those same first 90 day matters, Dorsey provided Brobeck with information with respect to revenue and expenses.
    - Dorsey also furnished Plaintiff with an analysis of the revenue and net income for matters opened by Former Brobeck Partners.

6

Mockler Dec. Exh. K. Although Plaintiff repeatedly references those materials, and although they are the only evidence of the profitability of that work, Plaintiff fails to disclose that those materials demonstrate a substantial loss. Thus, the undisputed evidence is that Dorsey enjoyed no profit whatsoever with respect to the matters the Brobeck partners opened in the first 90 days after they joined the firm.[6] Matters that might be "unfinished business" are some lesser subset of those files. Again, therefore, the record presented establishes that there was no profit on unfinished business with respect to the Dorsey.

- Interestingly, after its initial unfounded assertion that there were "profits" connected with Brobeck unfinished business completed at Dorsey, Plaintiff is careful never to make that assertion again in his Memorandum. The differences between Plaintiff's description of the Orrick defendants and its description of the Dorsey defendants is telling. With respect to the Orrick defendants, Plaintiff is quite willing to state that "the evidence shows that over $1.4 million in profits were derived by the Orrick Defendants on account of unfinished business." Pf's Mem at 15.[7] No such statement is ever made with

---

[6] Plaintiff comments that it "strains credulity" to believe that the files opened in the first 90 days by the Brobeck partners were unprofitable because Dorsey itself was profitable. Pf's Mem. at 6 n. 6. It is Plaintiff's comment that strains credulity. Dorsey itself was profitable based on the thousands of files that 700 lawyers handled and it defies logic to assert that, because the firm was profitable, every group of files in the firm should be profitable. It is comparable to concluding that if a mutual fund increases in value, it would "stain credulity" to deny that every stock owned by the fund increased in value. .

[7] The Dorsey defendants by no means suggest that there is support for such a statement even with respect to Orrick, and adopt the arguments made in Orrick's Memorandum in Support of its Motion for Summary Judgment to the effect that, with the exception of contingency fee matters, there could be no "profit" from hourly rate files because the Brobeck firm had no contractual right to receive any revenue or profit from those matters as they continued after Brobeck's dissolution.

7

respect to Dorsey. The most that is said is that "Dorsey collected more than $3.4 million in net revenue for clients that had been Brobeck clients." Pf's Mem. at 5. That is a vastly different statement, and one that has nothing to do with profit. The "more than $3.4 million" statement is taken from the total of net revenue. However, as the information furnished to Plaintiff makes clear, "net revenue" is nothing more than gross revenue less writeoffs. Once the expenses associated with producing the revenue are allocated, the *net income* is a substantial loss. To make the point with an eye towards current events, surely AIG had substantial "net revenue" for the past year, yet it has been less than profitable. The only statement made about Dorsey by Plaintiff, that it collected more than $3.4 million in revenue, is therefore not a statement about profit, and the only evidence before the Court with respect to that matter is Dorsey's analysis, to the effect that there was no profit whatsoever, but rather a substantial loss.[8]

## ARGUMENT

With all due respect to the California Court of Appeals, *Jewel v. Boxer* is an imperfect opinion that responded to extreme facts, and there is no reason to believe that the California Supreme Court would embrace *Jewel*'s holding if the issues were ever presented to the California Supreme Court. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007) (federal court not required to blindly apply broad rules announced by a state's intermediate appellate court when there is no relevant precedent from the state's supreme court). Nonetheless,

---

[8] Defendants appreciate that the liability and damages issues in this case have been bifurcated. However, if the record is clear that Dorsey took a loss on the matters that Plaintiff identifies as unfinished business, expert discovery and testimony is obviously not needed to confirm the exact extent of the loss. It would be necessary to move to the damages phase of discovery only if the Court were to give some credence t to Plaintiff's illogical theories regarding liability standards and only if evidence suggested that Dorsey made some profit and the only question was the amount of the profit. When there is no dispute regarding profit, the lack of any evidence of recoverable damages becomes dispositive.

8

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

in this case, Plaintiff seeks to use that imperfect opinion as a sword to rely upon benign facts to extend *Jewel* in manner that the opinion's authors could never have intended and in a manner that would require all common sense and logic to be checked at the door.

Obviously, this memorandum responds to Plaintiff's motion for partial summary judgment.[9]  "Where, as here, the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontradicted at trial." *Houghten v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in the original).  Evidence that would merely allow but not require judgment in the moving party's favor at trial is not sufficient.  *See Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

In connection with the motions currently pending before the Court, it is clear that Plaintiff cannot meet his burden of showing that under no circumstances could Defendants prevail at trial.  In fact, the record establishes the opposite; Plaintiff's claims are not sustainable and Defendants are entitled to summary judgment.

### A.  Partnership Opportunity Claims

"[T]he doctrine of [business] opportunity ... prohibits one who occupies a fiduciary relationship to [an entity] from acquiring, in opposition to the [entity], property in which the [entity] has an interest or tangible expectancy or which is essential to its existence. . . .  Under any test, a [business] opportunity exists when a proposed activity *is reasonably incident to the [entity's] present or prospective business and is one in which the [entity] has the capacity to engage*."  *Kelegian v. Mgrdichian* 33 Cal.App.4th 982, 988-989, 39 Cal.Rptr.2d 390 (1995) (emphasis added).

In this case, "Plaintiff contends that . . . when . . . the partnership *dissolves*, . . . all partnership opportunities remain the property of the partnership."  Pf's Mem. at 14 (emphasis added).  Plaintiff conveniently ignores that after February 10, 2003, Brobeck had no "capacity to

---

[9]  Plaintiff's motion for partial summary judgment is clearly based on a tactical assessment that the best defense against Defendants' motion for summary judgment is a good offense.

9

engage" in any new business opportunities.[10]

The undeniable logic of Plaintiff's "partnership opportunity" position in this litigation is that–once Brobeck dissolved and, thereafter, had no capacity to capitalize on any partnership opportunity—no former Brobeck partner could ever again work for any entity that had ever retained Brobeck for any purpose at any point in time without at the same time incurring an obligation to payover 100 percent of all profits from such work to the Brobeck estate, in perpetuity.[11] To articulate the logic of Plaintiff's theory is to expose its absurdity.

Clearly, there are potential circumstances in which it is possible for a former partner of a dissolved partnership to be liable to former partners for usurpation of a partnership opportunity, but such circumstances require some sort of intent or bad faith. In this vein, in *Leff v. Gunter*, 33 Cal.3d 508, 658 P.2d 740, 189 Cal.Rptr. 377 (1983), the California Supreme Court discussed case law from numerous jurisdictions regarding the viability of post-dissolution partnership opportunity claims. Basically, that opinion makes clear that the viability of such a claim would require a showing of wrongful manipulation or some other inequitable conduct that began before the dissolution and was undertaken with the intent to deprive the partnership of an opportunity. *See* 189 Cal.Rptr. at 381-382 ("'A partner may not dissolve a partnership to gain the benefits of the business for himself . . .'" [*quoting Page v. Page*, 55 Cal.2d 192, 10 Cal.Rptr. 643, 359 P.2d 41 (1961)]. . . . ''The sound rule is, that [a former partner] cannot make any profit to himself from a secret transaction *initiated while the relation of trustee and cestui que trust exists*, no

---

[10] Plaintiff' Memorandum also blurs relevant facts throughout. For example, Plaintiff's Memorandum states that "[f]ollowing Brobeck's dissolution, the Partner Defendants and Brobeck's other partners" entered into the Unfinished Business Agreement." Pf's Mem. at 1-2. In fact, February 10, 2003, was both the effective date of both the Final Partnership Agreement and Brobeck's dissolution. Plaintiff never suggest an alternative, specific date on which the dissolution was effective.

[11] Plaintiff clumsily contends that "the Dorsey witnesses admitted that they appropriated Partnership Opportunities." Pf's Mem at 6. The only purported evidentiary support offered for the assertion, are the Former Brobeck Partners deposition testimony that after joining Dorsey they did legal work for business entities that had been represented by Brobeck at some time in some capacity. To characterize this testimony as an admission is simply absurd.

10

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

matter when it springs into actual operation.' "[*quoting Donleavey v. Johnston*, 24 Cal.App. 319, 141 P. 229 (1914) (emphasis added)]).

One can imagine a two person law partnership where one of its partners comes across a lucrative case. Without making any disclosure to his partner, he forces a dissolution of the partnership because he wants to pursue that opportunity on his own. In such an instance, it is logical that the cheated former partner should be able to pursue a claim for usurpation of a partnership opportunity, and sensible that the disloyal partner can't use the firm's dissolution as a defense. But the facts in this case are at the other end of the spectrum. In this case it is undisputed that the Former Brobeck Partners did nothing to cause the dissolution of Brobeck and, in fact, were stunned when the dissolution was announced. Moreover, there is not even the suggestion of pre-dissolution impropriety; there is not a single matter that Plaintiff can identify as a Brobeck "opportunity" in existence (let alone known to the Former Brobeck Partners) at the time of the dissolution and later opened as a file at Dorsey. Plaintiff instead relies on his position that if any Former Brobeck Partner ever did any work at Dorsey for an entity that had been a Brobeck client at any point in time, it can be presumed that represents an opportunity that had been usurped from Brobeck. This position has no support in the law and indeed stands the whole rationale for the partnership opportunity doctrine, as it may apply to dissolved partnerships, on its head.

Finally, it should be noted that Plaintiff's partnership opportunity claims are based on a misreading of RUPA, which was adopted in California in 1996. Section 16404(b)(1), the provision cited by Plaintiff, provides that "(b) A partner's duty of loyalty to the partnership and the other partners includes all of the following: (1) To account to the partnership and hold as trustee for it any property, profit, or benefit **[A]** derived by the partner in the conduct and winding up of the partnership business or **[B]** derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity." (emphasis and [A] and [B] added). Plaintiff reads the above provision as if the connector between [A] and [B]

11

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Case: 08-03027   Doc# 29   Filed: 03/27/09   Entered: 03/27/09 14:08:56   Page 14 of 20

were "and", but that is not the case. Instead, the disjunctive—"or"—is used. The implication is clear—the statute does not mandate an accounting for profits from appropriation of business opportunities as the normal part of the winding up process. That is not to say that there is never such duty to account regarding partnership opportunities, but rather that if such a duty arises it does so independently of the winding up process. The usurpation of partnership opportunity can arise with respect to a dissolved partnership, but only under the limited circumstances described in *Leff, supra*, and those circumstances bear no resemblance to the case at hand.

All of the partnership opportunity based claims fail as a matter of law.

### B. Unfinished Business Claims

The frivolousness of Plaintiff's "unfinished business" claims may not be as self-evident as the absurdity of the "partnership opportunity" claims on their face, but even a minimal amount of scrutiny of the circumstances that gave rise to this litigation confirms the frivolous nature of those claims as well.

The California courts have laid out the steps for partners to take in order to avoid unfinished business issues, and Brobeck and its partners followed those steps to the letter. Plaintiff's response is to accuse the Defendants' of engaging in unlawful and fraudulent activity.[12] Moreover, even if the Brobeck partners had not disposed of any unfinished business issues in the Final Partnership Agreement, the logic of *Jewel v. Boxer*, flawed as it may be,[13]

---

[12] This lawsuit is the equivalent of being charged with bigamy after a lawful (and, in this case, involuntary) divorce.

[13] *See Rogers v. Tennessee*, 532 U.S. 451, 461-62 (2001) ("In the context of common law doctrines . . ., there often arises a need to clarify or even to reevaluate prior opinions as new circumstances and fact patterns present themselves. Such judicial acts, whether they be characterized as 'making' or 'finding' the law, are a necessary part of the judicial business . . .. The common law, in short, presupposes a measure of evolution . . .It accords common law courts the substantial leeway they must enjoy as they engage in the daily task of formulating and passing upon" common law issues presented, "reevaluating and refining them as may be necessary to bring the common law into conformity with logic and common sense. . . [H]owever one characterizes their actions, the fact of the matter is that common law courts then, as now, were deciding cases, and in doing so were fashioning and refining the law as it then existed in light of reason and experience.")

12

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

crumbles when it is applied to anything other than a contingency fee litigation matter. In this case, there is no dispute that not a single contingency fee litigation matter in which Brobeck was counsel was ever opened at Dorsey.

### 1. The Final Partnership Agreement Was Not "Unlawful and Invalid"

Under RUPA, "[t]he fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care. . ." Cal. Corp. Code § 16404. But the duty of loyalty that might otherwise be implicated by particular circumstances may be modified in the partnership agreement. Under RUPA, a partnership agreement may not—

> Eliminate the duty of loyalty under subdivision (b) of Section 16404 or paragraph (3) of subdivision (b) of Section 16603, but, if not *manifestly unreasonable*, may do either of the following:
> (A) The partnership agreement may identify *specific types or categories of activities* that do not violate the duty of loyalty.
> (B) All of the partners or a number or percentage specified in the partnership agreement may authorize or ratify, after full disclosure of all *material facts*, a specific act or transaction that otherwise would violate the duty of loyalty.

Cal. Corp. Code § 16103 (b)(3).

Plaintiff contends that the Unfinished Business Agreement is void because (1) it does not identify specific types or categories or activities, (2) it does not disclose all material facts, and (3) it is manifestly unreasonable. None of these contentions can withstand scrutiny.

**Specificity**. The Unfinished Business Agreement is very specific; it applies to *Jewel v. Boxer* "unfinished business" claims. In fact, it would be difficult for the agreement to be any more specific, as it even carves out two particular litigation matters from the *Jewel* waiver.

**Materiality**. Plaintiff's argument in support of this contention is classic bootstrapping, and is based on circular reasoning that, if accepted, would assure that no *Jewel* waiver under any circumstances could ever be legal. Specifically, Plaintiff asserts that the mere inclusion of the Unfinished Business Agreement as part of the Final

13

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
Case: 08-03027   Doc# 29   Filed: 03/27/09   Entered: 03/27/09 14:08:56   Page 16 of 20

Partnership Agreement represented a breach of the Brobeck partners' duty of loyalty and the failure to state in the Final Partnership Agreement that the Unfinished Business Agreement was illegal and invalid represented a failure to disclose material facts that somehow prevented the agreement from becoming legal and valid. A response to such convoluted reasoning is practically impossible. Suffice to say, that the terms of the Final Partnership Agreement and the accompanying memoranda from Brobeck management fully and completely disclosed all material facts.

**Reasonableness**. Finally and desperately, Plaintiff urges the Court to find that the diligent and responsible efforts of the Brobeck partners to proactively address *Jewel v. Boxer* issues before dissolution—as the *Jewel v. Boxer* opinion itself strongly recommends— were "manifestly unreasonable" *as a matter of law*. Plaintiff's argument appears to be that, because Brobeck was apparently insolvent as of February 10, 2003,[14] any *Jewel* provision, no matter how drafted, would be manifestly unreasonable because it would prejudice the rights of Brobeck's creditors to chase the Former Brobeck Partners for work that Brobeck could no longer perform and for income wholly earned after Brobeck's dissolution. What are truly manifestly unreasonable in this case are the positions and legal theories presented by Plaintiff that, if accepted, would make into pariahs former partners of dissolved law firms, as no prudent existing law firm would take on someone from whom a substantial portion of income generated would have to be remitted to the estate of the dissolved firm in perpetuity.

Finally, it must be noted that Plaintiff is attempting to use his unsustainable "partnership opportunities" theory as a basis to set aside the Final Partnership Agreement's provision

---

[14] Plaintiff asserts that "Defendants have stipulated that they will not contest the Trustee's assertion that Brobeck was insolvent at the time the Purported Waiver was given." Pf's Mem. at 21. That is not entirely accurate. Defendants have stipulated not to contest the solvency issue for the purposes of this motion, but Defendants have reserved their rights to contest that issue at trial.

14

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Case: 08-03027    Doc# 29    Filed: 03/27/09    Entered: 03/27/09 14:08:56    Page 17 of 20

regarding "unfinished business," which is a distinct theory. This type of bootstrapping and circular logic pervades Plaintiff's Memorandum.

### 2. The Unfinished Business Agreement Did Not Constitute a Fraudulent Transfer of Property of Brobeck

Plaintiff's overreaching in this case is perhaps nowhere more evident than in his assertion that "as a matter of undisputed fact, the transfer represented by the Purported Waiver [i.e., the Unfinished Business Agreement] was made with 'actual intent to hinder, delay or defraud Brobeck's creditors." Pf's SJ Mem. at 18. Contrary to Plaintiff's assertion, the undisputed testimony was not that "the Brobeck partners were well aware of the effect that the Purported Waiver would have on Brobeck and its creditors by denying them the profits from the Unfinished Business and Partnership Opportunities." *Id*. at 19. Rather, the undisputed testimony was that the Brobeck partners were aware that the Unfinished Business Agreement would bar them from asserting claims against ***each other***. *See, e.g.*, Santagata Dep. at 45-46.

Plaintiff's constructive fraudulent transfer claim fails as well. Plaintiff contends that the Court could determine as a matter of law that Brobeck did not receive reasonably equivalent value in a transaction in which Brobeck, as an entity, had no interest. Orrick's response to Plaintiff's combined motion addresses this question thoroughly, and Defendants incorporate here the arguments that Orrick makes so convincingly.

More generally, it is incumbent upon Plaintiff to present evidence to support each element of his claim. With respect to the Plaintiff's fraudulent conveyance claim, the initial required element is evidence that something of value was transferred. With respect to Defendants, Plaintiff cannot cross that hurdle.

As Plaintiff concedes, for the purpose of satisfying this initial element, what was transferred was "the profits Defendants received." Pf's Mem. at 17. If Defendants received no profits, there was no transfer. The fact that there may have been a profit shown on an individual file that could constitute "unfinished business" does not satisfy the Plaintiff's burden of showing

15

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
Case: 08-03027   Doc# 29   Filed: 03/27/09   Entered: 03/27/09 14:08:56   Page 18 of 20

a transfer. If there is an obligation under *Jewel*, it is <u>not</u> to turn over the profits on any individual matter that is profitable, but rather to account for and turn over the profits from the "unfinished business" – the profits from all of the unfinished business in aggregate. As argued in Dorsey's SJ Memorandum, the requirement for an accounting for all of the profits from all of the unfinished business requires the joinder of all former Brobeck partners. But even if for some reason that requirement is not imposed here, the fact remains that profit or loss must be measured by the aggregate of everything transferred to Dorsey that could be considered "unfinished business." The only evidence in the record with respect to that issue is that Dorsey suffered a substantial loss on files opened by Brobeck partners in the first 90 days (only a fraction of which were conceivably "unfinished business").

Nor will it suffice for the Plaintiff to assert that an analysis of profitability is to be reserved for the second phase of this proceeding. In order to avoid summary judgment on liability, it is incumbent on Plaintiff in the liability phase of this litigation to offer some evidence that something of value was transferred to Defendants, and Plaintiff has failed to do that.

Finally, Brobeck did get value out of the adoption of the Unfinished Business Agreement. The adoption of the Unfinished Business Agreement settled the unfinished business issues, and therefore relieved the Trustee of the need to expend assets of the estate pursuing claims that would be dubious even in the absence of the Final Partnership Agreement. Unfortunately, the Trustee opted to cast aside that benefit and to expend estate assets on a lawsuit that relies upon much-criticized legal authority from an intermediate court of the California state court system to push a theory that admittedly would rely upon this Court extending that precedent in a manner that is completely antithetical to any notion of common sense (*i.e.*, to non-contingency fee litigation matters and to all transactional matters).[15]

---

[15] Consider, for a moment, what would be the result under the following hypothetical if Plaintiff's theory is accepted by the Court: Plaintiff's counsel's law firm announces tomorrow that it is dissolving effective immediately. Plaintiff is abandoned without ongoing legal representation in this matter or, for that matter, the underlying bankruptcy case. A new law firm steps in to assume representation. If that law firm has absolutely no ties to or knowledge of this

16

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Case: 08-03027   Doc# 29   Filed: 03/27/09   Entered: 03/27/09 14:08:56   Page 19 of 20

## CONCLUSION

For the reasons stated herein, in the Dorsey SJ Memorandum, and the Orrick SJ Memorandum, Plaintiff's motion for partial summary judgment should be denied and Defendants' cross-motion for summary judgment should be granted.

Dated:  March 27, 2009                              DORSEY & WHITNEY LLP

                                                    By:    *Patrick J. McLaughlin*
                                                    Patrick J. McLaughlin, *Pro Hac Vice*
                                                    Attorney for Defendant

---

matter, no problem.  But if that law firm happens to have invited members of the dissolved partnership to join them, they would be disqualified from ever making a penny of profit in exchange for that representation, but it would be taking on the risk that such a matter would be unprofitable.

17

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**